In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 14-2822

LINZIE J. LEDBETTER

*Plaintiff-Appellant,*

*v.*

GOOD SAMARITAN MINISTRIES, BOBBY ANDERSON, and
  MICHAEL HEATH,

*Defendants-Appellees.*

———————

Appeal from the United States District Court for the
Southern District of Illinois.
No. 3:13-cv-00308-DRH-SCW — **David R. Herndon**, *Judge*.

———————

ARGUED JANUARY 27, 2015 — DECIDED FEBRUARY 6, 2015

———————

Before POSNER, SYKES, and HAMILTON, *Circuit Judges*.

POSNER, *Circuit Judge*. Linzie Ledbetter filed suit under
Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981
against his former employer, Good Samaritan Ministries of
Carbondale, Illinois, a tax-exempt nonprofit organization
that provides services to needy people in the Carbondale ar-
ea by means of "an emergency shelter, a transitional housing
program, a soup kitchen, a food pantry, and an emergency

assistance program." "Good Samaritan Carbondale—Needs Your Help: What We Do," http://goodsamcarbon dale.org/index.html (visited Feb. 2, 2015). He named two of the organization's supervisory employees (Anderson and Heath) as additional defendants. The suit charged retaliation for Ledbetter's having filed a charge of racial discrimination and of retaliation with the EEOC. The district court granted summary judgment in favor of the defendants and dismissed the suit, precipitating this appeal.

The plaintiff, who had begun working for Good Samaritan in 2007, was assigned to the shelter. In June 2010 a resident of the shelter complained to defendant Michael Heath, the executive director of Good Samaritan, that she was upset and afraid after Ledbetter had reprimanded her for not completing her assigned chores—even though, according to another member of the shelter staff, she had been excused from completing them—and had threatened to evict her from the shelter. Defendant Bobby Anderson, Ledbetter's immediate supervisor, conferred with Heath about the incident and the two then met with Ledbetter and warned him that future misbehavior could result in disciplinary action up to and including discharge.

The same month (June of 2010) Ledbetter filed a charge of racial discrimination and of retaliation with the EEOC. On September 24, 2010, having received his right to sue letter, he filed an employment discrimination suit against Good Samaritan in federal court, charging both retaliation and racial discrimination against him (he is black) by Heath (who is white) and Anderson (who is black), based on their warning to him—for he denied having engaged in any improper behavior toward the resident who had complained about him.

The defendants claim they first learned of this suit on October 21, 2010, when they were served. The suit was eventually dismissed for failure to state a claim, and there was no appeal.

According to the defendants, four days after Ledbetter filed that suit one of Good Samaritan's supervisory employees complained to executive director Heath about having been frightened and humiliated by Ledbetter over employee access to the shelter's computer games, which Ledbetter complained the supervisor had revoked. Anderson and Heath warned Ledbetter about the possible consequences of his alleged misconduct.

On October 5 Heath and the president of Good Samaritan's board of directors met with Ledbetter and again warned him about intimidating residents and coworkers (for remember that the second incident of alleged intimidation had occurred just a week earlier). According to Heath and Anderson, after that meeting Ledbetter falsely accused members of both the staff and the board of directors of the institution of lying and of trying to get him fired (Ledbetter denies having made these accusations, which have not been specified). On October 14—nine days after the warning by the executive director and the board president—Heath and Anderson met and, the defendants claim, decided to fire Ledbetter.

The day before the October 5 meeting with Heath and the board president, Ledbetter had filed a charge with the EEOC alleging that he was being discriminated against regarding scheduling and overtime because of his race, his first EEOC charge, and the warning he had received regarding the the September 2010 incident with a supervisor.

Heath and Anderson did not learn of the new charge until October 19, and the next day Anderson told Ledbetter that he was fired. The present suit alleges that he was fired in retaliation for filing that charge, which remember was his second. The defendants riposte that he was fired for an unrelated reason—necessarily, according to them, because they'd decided to fire him on October 14, five days before they had learned of the new charge.

Ledbetter was of course not present when Heath and Anderson met on October 14, so he cannot testify to what they agreed to at that meeting. But, by the same token there was nothing to prevent them from lying about what they agreed to at that meeting or shading their testimony. There is no documentation that the meeting occurred or, if it did, of what was said at it. Maybe they agreed that Ledbetter's days with the institution were numbered, that he was a problem employee inessential to the healthy operation of Good Samaritan, and that *sooner or later* he would have to go—for they did not fire him on the spot; they dawdled. We can't know how long they would have dawdled—but it is a possible inference that they fired him on the twentieth rather than later (or maybe never) because the filing of his second EEOC charge, which they learned about the day before, was the last straw. An EEOC charge is often a preliminary to a suit. His first EEOC charge had eventuated in a suit; the second was likely to as well; how many more would there be?

It is possible, given that Heath and Anderson seem to have been in no hurry to execute the "decision" they allegedly made on October 14 to fire him, that had it not been for his filing the second charge he would have remained employed, at least for a time; and if so then his being fired on

October 20 was, in part anyway, retaliation for his filing the second charge with the EEOC. If this is correct—if Heath and Anderson were waiting for the second shoe to drop before executing their decision, which may have been tentative, to fire him, and the second shoe was his second EEOC charge—then the present suit (which followed his third EEOC charge and was based on his being fired allegedly in retaliation for his filing the second charge) should not have been dismissed. The timing—Ledbetter was fired the day after the second shoe dropped—is suspicious, as in *Casna v. City of Loves Park*, 574 F.3d 420, 426–27 (7th Cir. 2009)**.** And the defendants do not contend that Ledbetter was or could have been fired on the distinct ground that his EEOC charges or suits were frivolous or filed in bad faith, as in *Mattson v. Caterpillar, Inc.*, 359 F.3d 885 (7th Cir. 2004).)

There is much more that is odd about the case—none of it remarked by the district court. The affidavits of Heath and Anderson on which the court based summary judgment in the defendants' favor are each only a page long and each states only, so far as Ledbetter's termination is concerned, that "I affirmatively state that each and every fact attributed to me in Defendants' Motion for Summary Judgment and Supporting Memorandum is true and correct to the best of my knowledge." That's an odd mode of testifying (an affidavit is sworn testimony), and allows an inference that the affiants were parroting language inserted by the lawyers in what amounted to pleadings. It's true that we held this type of affidavit valid in *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004), but the affiant in that case was a prison inmate and the factual allegations that the affidavit stated were true were allegations contained in his own response to the defendants' motion for summary judgment.

The present case is closer to *Payne v. Pauley*, 337 F.3d 767, 772–73 (7th Cir. 2003), which emphasizes the requirement in Fed. R. Civ. P. 56 that the affidavit of a lay witness be based on the witness's personal knowledge. The affidavits of Heath and Anderson don't say they're based on the affiants' personal knowledge. Nor do the two documents that the affidavits incorporate by reference. The requirement that an affidavit be based on the affiant's personal knowledge is crucial in this case. Heath and Anderson have no personal knowledge that Ledbetter made any false accusations after the October 5 meeting; the allegation that he did was hearsay. Indeed there is no admissible evidence that the events they contend were the reason for firing Ledbetter ever happened.

The motion for summary judgment is only two pages long, and all it says regarding Ledbetter's termination is that "the undisputed *evidence* is that the decision to terminate [him] was made *before* October 19, 2010" and "the undisputed *evidence* is that Defendants learned of [his] EEOC charge on October 19" (emphases in original). The Supporting Memorandum adds a bit of detail, stating that "Anderson made the decision to terminate Plaintiff; a decision endorsed by Heath. … On or about October 14, 2010, the combination of Plaintiff's conduct and his false accusations prompted Heath and Anderson to discuss possible immediate termination of Plaintiff. Anderson, as Plaintiff's immediate supervisor, made the decision to terminate Plaintiff during that meeting." The reference to "false accusations" gives us pause. For aught that appears, these could be the accusations made in Ledbetter's first or second EEOC charge, in which event the decision to fire him could well have been retaliation for his filing either or both of those charges.

The "or about" in the Supplementary Memorandum gives us further pause. Apparently the defendants don't know the date of the meeting, though the date is crucial—their defense hinges on its being before October 19. "On or about" is said, moreover, only about the crucial October 14 meeting—the meeting that one would have expected Anderson and Heath to have precise knowledge of.

In addition to his supervisory job (and indicative that he cannot have climbed far up Good Samaritan's totem pole—maybe not far enough to fire Ledbetter unilaterally), Anderson worked as a nurse in addition to his job at Good Samaritan. The Supplementary Memorandum states that "between October 15, 2010, and October 19, 2010, Anderson worked 12 hour shifts at his nursing job. Even though the decision [to fire Ledbetter] was made a week prior, Anderson was unable to meet with Plaintiff to communicate his decision to terminate him until October 20, 2010, because of this work schedule." This is thoroughly self-serving testimony (treating it as incorporated by reference in Anderson's terse affidavit), and none too plausible. And though most testimony by a party to a lawsuit is self-serving and is not to be rejected on that account, *Widmar v. Sun Chemical Corp.*, 772 F.3d 457, 459–60, 460 n.1 (7th Cir. 2014), one would expect Good Samaritan to have backed up Anderson's affidavit with a record of some sort showing that he'd indeed worked 12-hour shifts between the 15th and the 19th and so mayn't have had time to speak to Ledbetter. Yet if his 12-hour shifts were really *between* those days, as the Supplementary Memorandum states, he could have told Ledbetter on the 19th that he was fired.

We can find no document backing up Anderson's testimony. Nor was his lawyer able to answer our question at oral argument why Anderson was so eager to be the one to tell Ledbetter of his termination. Ledbetter was answerable to other supervisors as well as to Anderson, and one of those supervisors could have been told to give Ledbetter the bad news. One would think that if Ledbetter was as irascible and intimidating a figure as the defendants claim, Good Samaritan would have terminated him immediately upon deciding to fire him.

Notice too that if the critical meeting about Ledbetter's fate occurred not on October 14 but on October 13, Anderson could have told Ledbetter the next day that he was fired, while if it occurred on October 15 he could have told him that day. For Anderson wasn't working 12 hours as a nurse that day unless "between" is taken to mean October 16 through October 18—in which event, as we pointed out, he could have notified Ledbetter of the firing on October 19.

Further muddying the waters, in response to an interrogatory asking the date of this meeting Heath stated that he "does not recall specific dates, but there was more than one discussion regarding Bobby Anderson's decision that Plaintiff should be terminated." Likewise Anderson stated that "he does not recall the specific day he came to that conclusion" (to fire Ledbetter). These interrogatory answers are inconsistent with the defendants' claim that the decision to fire him was made on October 14.

Finally Ledbetter claims that when he was summoned to meet with Anderson on the 20th, Anderson, who of course had learned the previous day that Ledbetter had filed a second charge with the EEOC, before firing him asked him

whether he had indeed filed a second charge and he acknowledged that he had. The implication is that if Ledbetter had said "no," Anderson would have held off firing him until he could verify the truth of the denial. If this is correct, then the firing of Ledbetter was indeed retaliatory.

There is still more to make us wonder what was really going on. In response to Ledbetter's second charge, Good Samaritan's lawyer wrote the EEOC: "On October 20, 2010, Ledbetter was terminated *subsequent* to his display of defiant and insubordinate behavior towards his immediate supervisor, Bobby Anderson" (emphasis added). That's inconsistent with the defendants' assertion that he was fired not because of any misbehavior toward Anderson but because of false accusations and mistreatment of coworkers and of residents that occurred before October 14. In addition, the letter doesn't say that the decision to terminate Ledbetter was made on October 14—another indication that the defendants may have concocted that date.

There are too many loose ends to have justified the district court in granting summary judgment in favor of the defendants. The judgment is therefore reversed and the case remanded. Ledbetter, who has no legal training, has been representing himself throughout this litigation. The district court should consider requesting a lawyer to represent him in the further proceeding that we are ordering.

REVERSED AND REMANDED.