In the

# United States Court of Appeals
## For the Seventh Circuit

No. 15-1095

DR. SUBAH PACKER, PH.D.,

*Plaintiff-Appellant,*

*v.*

TRUSTEES OF INDIANA UNIVERSITY
SCHOOL OF MEDICINE, et al.,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:12-cv-00008 — **Tanya Walton Pratt**, *Judge.*

ARGUED JUNE 4, 2015 — DECIDED AUGUST 28, 2015

Before BAUER, ROVNER, and HAMILTON, *Circuit Judges.*

ROVNER, *Circuit Judge.* This case is yet another cautionary tale about the consequences of not properly responding to a motion for summary judgment. Dr. Subah Packer was discharged from a tenured position at the Indiana University School of Medicine based on what the University says was a persistent failure to meet expectations, particularly with respect to publication and securing grant money for her

research. Packer contends that the official rationale for her discharge is a mere pretext for sex discrimination, and that the dean of the medical school had long sought her discharge after he was unsuccessful in preventing her from obtaining tenure. The problem, for Packer, is that when the defendants (the trustees of the medical school—whom we shall refer to collectively as the "University") moved for summary judgment, her counsel below did not properly support the elements of her claims with specific citations to admissible record evidence. Her new counsel has attempted to rectify the omissions on appeal, but this is too late in the day. Given the patent defects in Packer's summary judgment memorandum below, we conclude that the district court properly entered judgment against Packer.

## I.

Packer has a Ph.D. in physiology from the University of Manitoba in Winnipeg, Canada. In 1986, she began work as a post-doctoral fellow at the University's School of Medicine, and in 1988 was hired as assistant scientist and assistant professor (part-time) by the school's department of physiology and biophysics (the "physiology department"). She was appointed to the tenure-track position of assistant professor in 1994. When Packer sought tenure on the medical school faculty in 1999, the dean of the medical school, Craig Brater, opposed her appointment, and her application was denied, despite a favorable recommendation from the university's promotion and tenure committee. But Packer successfully grieved the denial, and in 2001 she was awarded tenure and promotion to the position of associate professor.

Faculty members in the physiology department are evaluated annually based on their performance in three areas: teaching, research, and service. A professor's rating in research is based both on her record of publication and on her success in obtaining external funding to support her research: she is expected to publish at least one research paper as first or senior author (or a major review) per year (as averaged over a period of three years); and with respect to funding she is, absent success in obtaining grant money, expected at a minimum to submit at least two grant applications per year that receive sufficiently high scores from reviewers. A faculty member's overall performance will be deemed satisfactory if she meets the minimum requirements in all three areas or if she is rated excellent in either teaching or research.

It is Packer's performance in the area of research that is a critical area of contention between the parties. The University represents that Packer, in the years leading up to her termination, repeatedly failed to meet expectations with respect to publication and external funding. Packer contends that her research performance is better than the University makes it out to be; she argues further that to the extent her scholarship and efforts to fund her research lagged behind that of her peers, it was in part because Dr. Michael Sturek, the chairman of the physiology department, attempted to sabotage her work by assigning her a series of increasingly insufficient and inappropriate lab spaces and interfering with her efforts to obtain grant money. She also alleges that there were other male faculty members in the department whose research performance also fell short of expectations but who suffered no adverse consequences.

Packer's over-arching theory is that when Sturek became chairman of the department in 2004, Brater, who had opposed Packer's appointment to the faculty from the start, instructed Sturek to find a way to get rid of her. Sturek accomplished that aim, she postulates, by undermining her research efforts in the ways we have mentioned and by assigning her consistently negative ratings in that area in order to build a record that would support her termination. He also repeatedly denied her salary increases and, at the conclusion of the 2012-13 academic year, reduced her salary by ten percent based on the negative ratings. Packer alleges that Brater and Sturek, and for that matter the University, treated her adversely in large part due to her gender.

Based on her allegedly inadequate performance as to research, Packer was given overall ratings of unsatisfactory in her evaluations for 2005-06, 2006-07, and 2007-08. A review and enhancement committee was convened late in 2008 based on Packer having received consecutive negative evaluations, but in view of what the committee deemed to be Packer's strong performance in both teaching and service, and her good faith (albeit unsuccessful) efforts to meet expectations with respect to research, the committee concluded that no discipline nor remedial plan for Packer was warranted. In 2008-09, although Packer was still deemed to be performing below expectations as to both the publication and funding components of research, she was rated excellent in teaching based on her receipt of the national (and prestigious) Guyton Physiology Educator of the Year award, and that rating of excellence in teaching resulted in an overall rating of satisfactory. But in the following three years (2009-10, 2010-11, and 2011-12), Packer's overall perfor-

mance was again rated as unsatisfactory based on her below-expectations achievements with respect to research.

In 2013, Sturek initiated dismissal proceedings against Packer. Because Packer was tenured, she could only be terminated on certain specified grounds, including, as relevant here, serious misconduct. Sturek asserted that Packer was guilty of such misconduct in that she had persistently neglected her duties and failed to complete the tasks reasonably expected of her. He cited her unsatisfactory ratings in six of nine annual reviews, her failure to comply with several aspects of a performance improvement plan that had been put into place in 2011, as well as the negative student evaluations she had received in a course she taught in the Fall of 2011. Sturek forwarded his recommendation to Dean Brater, who in turn submitted it to a three-person Conduct Characterization Committee. A majority of that committee concluded that Packer's record of unsatisfactory performance was appropriately characterized as serious misconduct warranting dismissal. The chancellor of the university informed Packer that he concurred in the recommendation of dismissal and that she would be terminated effective December 6, 2013.

Two years in advance of her discharge, and after exhausting her remedies with the Equal Employment Opportunity Commission ("EEOC"), Packer filed this suit against the University pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 and e-3, and the Equal Pay Act of 1963, 29 U.S.C. § 206(d). She alleged that the University had discriminated against her based on gender in her compensation and her working conditions and that it had unlawfully retaliated against her for having pursued internal complaints on those

subjects. After she was terminated, she amended the complaint to include her discharge, which she cited as further evidence of both gender discrimination and retaliation, as well as a breach of contract.

The University moved for summary judgment, and based on a variety of omissions in the memorandum Packer submitted in opposition to that motion, the court concluded that summary judgment was warranted. Addressing Packer's claims one by one, the court determined that Packer either failed to support these claims with the requisite citations to specific evidence in the record demonstrating the existence of one or more genuine issues of material fact, ignored altogether key elements of certain claims, and otherwise failed to provide legal and evidentiary support for her claims. *Packer v. Trustees of Indiana Univ. Sch. of Medicine*, 73 F. Supp. 3d 1030 (S.D. Ind. 2014).

## II.

Our review of the district court's decision to grant summary judgment is *de novo. E.g., Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 563 (7th Cir. 2015). The district court has a single task when presented with such a motion, and that is to ascertain based on the record evidence whether there is a genuine dispute of material fact requiring a trial. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994); *see also D.Z. v. Buell*, — F.3d —, 2015 WL 4652778, at *5 (7th Cir. Aug. 6, 2015); *Egan v. Freedom Bank*, 659 F.3d 639, 643 (7th Cir. 2011); *Kodish v. Oakbrook Terrace Fire Protection Dist.*, 604 F.3d 490, 507 (7th Cir. 2010); *Sun v. Bd. of Trustees of Univ. of Ill.*, 473 F.3d 799, 812 (7th Cir. 2007). Consistent with that task, the obligation of the

party opposing summary judgment is to demonstrate that there are one or more such factual disputes, *see Waldridge*, 24 F.3d at 920, by identifying admissible evidence that would permit the trier of fact to make a finding in the non-movant's favor as to any issue as to which it bears the burden of proof, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); *Roberts v. Broski*, 186 F.3d 990, 995 (7th Cir. 1999). Toward that end, Federal Rule of Civil Procedure 56 demands that the non-movant "cit[e] to *particular parts* of materials in the record" in order to show that there is a genuine dispute of fact between the parties on a relevant point. Rule 56(c)(1)(A) (emphasis ours). Local rules akin to the Southern District of Indiana's Rule 56-1 make the particularity requirement even more explicit by specifying that any citation to record materials "must refer to a *page or paragraph number* or otherwise similarly specify where the relevant information can be found in the supporting evidence." S.D. Ind. L. Rule 56-1(e) (emphasis ours). The rule adds that "[t]he court has no duty to search or consider any part of the record not specifically cited in the manner described in subdivision (e)." Rule 56-1(h). We have long sustained "the exacting obligation" such rules impose on the party contesting summary judgment to identify and guide the court to the specific evidence on which it is relying to show that a trial is required. *Waldridge*, 24 F.3d at 921–22 (collecting cases); *see also Modrowski v. Pigatto*, 712 F.3d 1166, 1169 (7th Cir. 2013); *Delapaz v. Richardson*, 634 F.3d 895, 899–900 (7th Cir. 2011).

The memorandum that Packer filed below in opposition to the University's motion for summary judgment failed the court and the litigation process in multiple ways (including a factual

narrative that wholly ignored the University's own statement of facts it believed to be undisputed), but the one we shall focus upon is her failure to analyze the elements of her individual claims with reference to the evidence. In responding to the substantive arguments made by the University in seeking summary judgment, Packer consistently failed to support her factual assertions with appropriate citations to the relevant portions of the record so as to demonstrate why the facts material to each of her claims were disputed. Instead, she often supplied general citations to affidavits or depositions without directing the court to any particular page or paragraph number. In some instances, she also neglected to address important elements of her claims, let alone discuss why, in light of the record evidence, a finder of fact could find in her favor on those elements. We shall elaborate on these omissions momentarily as we address the individual claims as to which Packer contends that the district court erred in granting summary judgment. But before we turn to that task, we need to explain why we will confine ourselves to the evidence that Packer cited and relied upon below, and why we will not entertain the very different factual presentation that she has presented on appeal.

Packer's appellate counsel has done a far superior job of identifying and elaborating on the factual underpinnings of her case. In particular, her new counsel has supported Packer's factual contentions with appropriate citations to the record. And counsel has presented much more developed arguments as to why the evidence might support a verdict on each element of Packer's claims. These arguments, and the evidence cited in support of them, might or might not have been

sufficient to avoid summary judgment had that effort been made below. As we are about to explain, we do not pass on the sufficiency of the more developed factual case that Packer's counsel has made on appeal. It is enough to note that her appellate presentation is much more consistent with the spirit as well as the letter of Federal Rule 56 and Local Rule 56-1.

But our task, in reviewing the district court's decision to grant summary judgment in favor of the University, is to consider the reasons for that court's decision and in turn what was argued and presented to the district court by the parties. *See Klein v. Perry*, 216 F.3d 571, 575 (7th Cir. 2000) (remanding to district court for further consideration when its stated reasons for granting summary judgment were insufficient to permit meaningful appellate review); *In re Snyder*, 152 F.3d 596, 599–600 (7th Cir. 1998) (faulting appellants for ignoring reasons given by district court for its judgment). We will not consider factual arguments that were not raised below nor shall we consider evidence that was not properly cited to the court below. "It is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal *or factual*, why summary judgment should not be entered. If it does not do so, and loses the motion, it cannot raise such reasons on appeal." *Milligan v. Bd. of Trustees of So. Ill. Univ.*, 686 F.3d 378, 389 (7th Cir. 2012) (emphasis ours) (quoting *Liberles v. Cook Cnty.*, 709 F.2d 1122, 1126 (7th Cir. 1983), and collecting cases); *see also O'Gorman v. City of Chicago*, 777 F.3d 885, 890 (7th Cir. 2015). Packer forfeited the much more extensive, and documented, factual case that she presents on appeal, and the University has relied on the forfeiture in defending the judgment. Packer in reply has pointed out that

she did present a substantial factual record to the court. Packer
Reply Br. 6. Literally that is true in the sense that Packer
attached numerous affidavits, depositions, and other docu-
ments to her summary judgment memorandum. But the
dispositive point is that she did not cite specific parts of that
record in support of relevant factual arguments, as the rules
required her to do. In this court, Packer has not simply
elaborated on factual arguments that she preserved below;
rather, as the University rightly observes, "Dr. Packer essen-
tially argues an entirely different case on appeal." Univ. Br. 32.
It would be unfair to both the University and the district judge
for us to conclude that there exist material disputes of fact
precluding summary judgment based on evidence that Packer
has cited for the first time on appeal, when the district court
was never alerted to those evidentiary grounds and the
University did not have the opportunity to address them
below. In contrast to a criminal case, in which we might reverse
the judgment based on a forfeited argument if we were
convinced that the district court had committed plain error, *see*
Fed. R. Crim. P. 52(b), *e.g.*, *United States v. Butler*, 777 F.3d 382,
386–87 (7th Cir. 2015), plain error is cognizable in a civil case
only in truly extraordinary circumstances, *e.g.*, *S.E.C. v. Yang*,
— F.3d —, 2015 WL 4547891, at *4 (7th Cir. July 28, 2015);
*Spaine v. Cmty. Contacts, Inc.*, 756 F.3d 542, 545 (7th Cir. 2014).
Packer has not demonstrated that the circumstances here are
extraordinary—nor could she, frankly. We shall therefore
confine our focus to the evidence and evidentiary arguments
that Packer presented below in opposition to summary
judgment and to the deficiencies in both that the district court
relied on in granting the University's motion. For reasons that

follow, we agree with the district court that the limited evidence and arguments that Packer presented to that court were plainly insufficient to establish a genuine dispute of fact requiring a trial as to any of the claims she pursues on appeal.

## A. Title VII - Disparate Treatment

Packer contends that, because of her gender, she was paid less than her male counterparts and, ultimately, discharged, in violation of Title VII's ban on sex discrimination. She attributes the discrimination in particular to Brater and Sturek, whom she characterizes as biased against female faculty members. Packer believes she can demonstrate this bias and discrimination through both direct and indirect means. But the district court properly concluded that she failed to establish a genuine dispute of material fact as to the elements of her sex discrimination claim.

As direct proof of sex discrimination, Packer relied on two categories of evidence: (1) evidence that Dean Brater gave pay raises, promotions, favorable lab assignments to male faculty members despite their failure to obtain research grants from the National Institutes of Health ("NIH"), whereas she was penalized for the same failure; and (2) evidence that Sturek has hired no women onto the faculty of the physiology department since he became chair of that department in 2004, and once suggested that one of the two women in the department take early retirement because it was "better than nothing." R. 125-4 at 9.

However, as proof of Brater's differential treatment of men and women, Packer supplied only general cites to the depositions of two witnesses, along with a cite to one paragraph of

her own affidavit. The district court was well within its discretion to disregard the two deposition cites, which did not point the court to particular page numbers of the depositions, in violation of both Rule 56(c)(1)(A) and Local Rule 56-1(e). It is not the court's role or obligation to read an entire deposition or affidavit in an effort to locate the particular testimony a party might be relying on; the court ought to *know* what portion of a witness's testimony the party is invoking so that it can focus its attention on that testimony and assess whether it is admissible and actually supports the fact or inference for which it is cited. *See Waldridge*, 24 F.3d at 923 (court is entitled to rely on "roadmaps" required by local summary judgment rules, "and without them the court should not have to proceed further, regardless of how readily it might be able to discern the relevant information from the record on its own) (citing, *inter alia*, *Bell, Boyd Lloyd v. Tapy*, 896 F.2d 1101, 1102–03 (7th Cir. 1990)); *see also D.Z. v. Buell, supra*, 2015 WL 4652778, at *5.

The cited paragraph of Packer's affidavit was insufficient for a distinct reason. In that paragraph, Packer describes a meeting with Brater in which he informed her and three male faculty members that they would have to give up their laboratories and careers at the University if they did not obtain NIH funding. She then avers that only she subsequently lost her lab space, whereas her male colleagues "despite never acquiring NIH grants, or in many/most years any grants at all, continued to enjoy functional lab space, nice offices, promotions and salary raises." R. 125-7 at 3 ¶ 12. Packer is certainly competent to offer testimony as to what occurred during the meeting with Brater and what happened to her own salary, assigned lab space, and status after that meeting. But her

affidavit gives the reader no reason to believe that she has the requisite personal knowledge of—to cite one example—what grant funding her male colleagues did or did not obtain in the months after the meeting with Brater; for all we know, that assertion may be founded entirely on hearsay. *See* Fed. R. Civ. P. 56(c)(4); *see also, e.g.*, *Ledbetter v. Good Samaritan Ministries*, 777 F.3d 955, 957 (7th Cir. 2015) (citing *Payne v. Pauley*, 337 F.3d 767, 772–73 (7th Cir. 2003)); *Ani-Deng v. Jeffboat, LLC*, 777 F.3d 452, 454 (7th Cir. 2015). For that reason, the district court properly disregarded the affidavit's summary assertion of differential treatment.

As for Sturek, the only piece of evidence that Packer cited as proof that he never hired a woman to serve on the faculty of the physiology department was a series of charts ostensibly reflecting the salaries of the associate professors in the department. This too is a problematic citation, both because the charts say nothing expressly about when these associate professors were hired and by whom, and because the charts were offered in isolation with no foundational explanation as to how they were prepared and by whom.

Finally, considered in context, Sturek's remark to a female professor (Dr. Patricia Gallagher) that a University early retirement package was "better than nothing" does not support an inference that Sturek was biased against female faculty members. An examination of Gallagher's testimony reveals that Sturek made this remark when the two of them were discussing her recent removal (by someone other than Sturek) from the position of dean of graduate studies. Sturek urged Gallagher, whose research funding and performance ratings as a faculty member had suffered due to the demands

that the dean position had placed on her time, to ramp up her efforts to obtain grant money now that she was free of those burdens. Alternatively, he suggested that he was willing to see if she might be eligible for the retirement package. Gallagher told him that she did not find the package attractive, which is what prompted Sturek's "better than nothing" remark. But by Gallagher's own account, Sturek did not actually suggest that she retire, and neither his remark about the retirement benefits nor anything else in the cited pages of her deposition suggests that he was attempting to ease (or push) her off the faculty because he was prejudiced against women.

Packer's attempt to establish discrimination indirectly, *see McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973), was even less supported. Beyond reciting the elements of the *McDonnell-Douglas* framework, Packer cited no evidence satisfying the elements of a *prima facie* case of discrimination, nor evidence that the University's gender-neutral reasons for the adverse actions it took against her were pretextual. The entirety of her argument was presented in a one-sentence question addressed to pretext: "How can any reason proffered by Dr. Sturek for rating Dr. Packer unsatisfactory be considered 'honest' when he continually boasted he was following orders to get rid of her?" R. 125 at 22. Not a single cite to the record (or even to Packer's own factual narrative) accompanied this rhetorical question. This was, as the district court concluded, a totally inadequate invocation of the *McDonnell-Douglas* framework: it assigned to the district court the entire job of constructing an indirect case of discrimination, which the court rightly declined to perform.

### B. Title VII - Retaliation

Packer also pursues a claim of retaliation under Title VII, contending that the University took a series of adverse actions against her (including denying her pay raises and then decreasing her pay, and depriving her of adequate research lab space) because of the complaints she had filed internally with the University's office of equal opportunity and externally with the EEOC. But in her summary judgment memorandum below, Packer only devoted a few sentences to explaining the evidentiary basis for this claim. She cited her own affidavit generally (again, a form of citation that did not comport with the rules) as establishing the time line of "protected events and resulting retaliation," R. 125 at 20, while at the same time conceding that the temporal proximity between her protected complaints and the University's adverse treatment of her was not alone enough to support an inference that there was a causal relationship between the two, *see*, *e.g.*, *Castro v. DeVry Univ.*, *supra*, 786 F.3d at 565 ("temporal proximity alone is 'rarely sufficient' to establish causation") (quoting *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 635 (7th Cir. 2011)). In an effort to establish that nexus, Packer invoked a statement by Brater that he wanted her "out of his school" as direct evidence of a retaliatory animus. R. 125 at 20. But she supplied no record citation for that statement in the relevant section of her analysis. To be fair, the factual narrative that Packer set forth at the outset of her memorandum did cite the testimony of Sturek's predecessor as department chairman that Brater wanted her "out of the department," R. 125-2 at 12, as well as her own affidavit noting that Brater once described her as "a big complainer," R. 125-7 at 3 ¶ 12. The problem, though, is

that Packer's abbreviated analysis of the claim made no effort to weave such evidence into a cogent argument, grounded in the case law, as to why a factfinder might be able to conclude that Brater and the University had embarked on a course of retaliatory conduct because she had engaged in protected conduct. Nor, apart from the direct framework for establishing retaliation, did Packer offer any suggestion as to how she might establish retaliation indirectly. In short, Packer's cursory treatment of the retaliation claim was wholly insufficient and, in our view, waived. *See*, *e.g.*, *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012).

**C.   Equal Pay Act**

The gist of Packer's claim under the Equal Pay Act is obvious: she believes that she was consistently paid less than similarly situated male faculty members. But the pertinent section of Packer's summary judgment memorandum contained a glaring omission: she offered no analysis nor citation to evidence in support of the requisite *prima facie* case of discrimination in compensation. *See*, *e.g.*, *Warren v. Solo Cup Co.*, 516 F.3d 627, 629 (7th Cir. 2008); 29 U.S.C. § 206(d)(1). Instead, Packer skipped over the *prima facie* case entirely and proceeded to the issue of pretext. The omission may be somewhat understandable, to the extent that the University's own summary judgment memorandum, after identifying the elements of the *prima facie* case, turned its attention to justifications for paying various male faculty members more than Packer. R. 114 at 38–41; *see* § 206(d)(1)(i)-(iv). Nonetheless, in omitting to address the *prima facie* case at all, Packer made it virtually impossible for the court to evaluate her claim.

Because Packer failed to identify and discuss even one male comparator who was paid more than she was, for example, there was no way for the court to assess whether there was a genuine factual dispute as to any justification for the pay disparity. Packer's memorandum instead took the sweeping position, without a single factual or legal citation to support it, that any purportedly neutral criteria used to determine her pay were necessarily tainted by the alleged bias harbored by Brater and Sturek. In short, Packer not only neglected to address the *prima facie* aspect of her case, but sketched out only a skeletal argument on the matter of pretext. Such cursory treatment amounts to a waiver of the claim. *See, e.g., Puffer*, 675 F.3d at 718.

## D. Breach of Contract

Finally, Packer contends that when she was granted tenure, the University entered into a contract with her that it breached by engaging in a long-term and bad-faith campaign to get rid of her. She cited no Indiana statute or case law in support of her theory, but the relevant omission for our purposes is her failure to support evidence establishing her contractual rights. Packer mentioned (without a record citation) the University's Academic Handbook and supplied a cite to a particular policy statement on tenure. But, as the district court pointed out, the preamble to the Academic Handbook expressly disclaims the creation of any legal rights, R. 113-20 at 20, and the cited policy statement (R. 125-16) was part of an Academic Guide that applies to the University's Bloomington campus only, *see* https://www.indiana.edu/~vpfaa/academicguide/index.php/Main_Page (visited Aug. 26, 2015). Packer also referenced various letters that she had received upon the grant of tenure,

but she did not supply a record citation directing the court to those letters nor did she even discuss their content. Again, it was not the district court's obligation to root through the record in an effort to find those letters. *See*, *e.g.*, *Friend v. Valley View Cmty. Unit Sch. Dist. 365U*, 789 F.3d 707, 711 (7th Cir. 2015) (citing, *inter alia*, *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)). Packer's contractual theory was thus wholly unsupported, and the district court properly disposed of this claim too on summary judgment.

### III.

A district court may reasonably expect a party opposing summary judgment to lay out its case thoroughly and include in its memorandum cites to the specific parts of the record confirming that there are genuine disputes of material fact which require the case to be tried. Packer failed in that obligation, supplying the court with only an abbreviated analysis of her claims and sporadic and incomplete citations to the record that were in violation of the federal and local rules governing summary judgment. She may not on appeal attempt to correct the omissions that the district court cited and relied on in entering summary judgment against her. It would be incongruous for us to say that district courts may insist that the parties strictly comply with summary judgment rules, but then excuse such non-compliance by giving the losing party the opportunity to correct its mistakes on appeal.

We AFFIRM the judgment.