In the

# United States Court of Appeals
### For the Seventh Circuit

No. 15-3547

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

SHAFT JONES,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Indiana, Fort Wayne Division.
No. 1:11-cr-00078-TLS-1 — **Theresa L. Springmann**, *Judge.*

ARGUED NOVEMBER 2, 2016 — DECIDED DECEMBER 12, 2016

Before WOOD, *Chief Judge*, and POSNER and WILLIAMS,
*Circuit Judges*.

POSNER, *Circuit Judge*. A federal jury found the defendant
guilty of conspiring to possess, with intent to distribute, five
or more kilograms of cocaine, and of related crimes includ-
ing carrying a gun in connection with drug trafficking. The
district judge sentenced him to 270 months in prison.

A government informant named Martinez had arranged with Jones to sell him 20 kilograms of powder cocaine. (The term he used was "20 eggs" for making omelettes. Obviously that was code.) At their rendezvous outside a car wash police seized Jones, who drove his luxury SUV through the car wash and emerged to a semicircle of waiting police cars, and in a pat-down search found a loaded pistol and four magazines each containing 20 bullets. The police also found an assault rifle in the back seat of Jones's car together with four more magazines, each containing 30 bullets, plus a night-vision scope and bags containing a total of $353,443 in cash. Pursuant to a search warrant, police found in his home and in a second car parked there another $321,280 in cash plus more guns and ammunition, a bullet-proof vest, a money counter, and a digital scale.

By the time their searches were done, they had seized $890,210 from Jones, including cash from several bank accounts. There was no evidence that he could have obtained this much cash from lawful business dealings; indeed there was no credible evidence that he had any lawful sources of money. While in jail awaiting trial he told another prisoner that he'd been at the car wash to buy "keys," which is a street name for cocaine. He bragged that he never bought less than $100,000 worth of cocaine at a time. The cash, which the judge found to be proceeds of drug dealing, was evidence that Jones had sold 31.79 kilograms of cocaine, assuming a price of $28,000 a kilogram. Adding the 20 kilograms promised in the sting operation, the judge concluded that Jones had engaged in an ongoing scheme that had involved the purchase and resale of more than 50 kilograms of cocaine. There was also evidence that he'd conspired with

brokers in the criminal drug trade to purchase illegal drugs and resell them.

The judge, concerned particularly about the considerable weaponry found in Jones's car when he was arrested, and about the magnitude of his drug activity, sentenced him to 270 months in prison, a sentence at the top of the applicable guidelines range.

The arguments for reversal made by the defendant's lawyer in his briefs and at oral argument were exceptionally weak, including his argument that the $353,443 in cash found in the defendant's car could have been for anything, when obviously it was to purchase cocaine from Martinez, the informant. There was no evidence of any other possible use of the money, or any other possible motive for meeting with the informant, who testified plausibly about his negotiations and meeting with the defendant. No motive was offered for carrying so much weaponry if the money was to be given to the recipient (Martinez) for a legal transaction. He argues that he did not have enough money with him to complete the transaction: he had agreed to buy 20 kilograms of cocaine at $26,000 per kilogram, but as 5 of those kilograms were to be bought on credit the immediate cost to him would be $390,000. A lot of money—yet it would hardly have been a surprise if he'd tried to bargain down the price that he'd agreed to pay by pleading that $353,443 was all he had—an amount equal to 90.6 percent of the agreed-on price of $390,000, and therefore not trivial. Or he might have thought the seller would agree to front him even more of the cocaine for later payment, or reduce the amount of cocaine that he would buy. A final bit of evidence of the defendant's

involvement in the cocaine trade is that as noted earlier a digital scale was found in his home.

At oral argument the defendant's lawyer said that his client had been a boxing promoter, but no explanation was offered for why a boxing promoter should be carrying so much cash and weaponry, and the evidence that Jones had ever been one was slim: Martinez testified that the brokers, in suggesting Jones as a potential client, referred to him as a "boxing trainer" who "always pa[id] on time," and Jones told the waitress at the restaurant that he had taught one of the brokers to box. The notion that the deal between Jones and Martinez had something to do with Jones's work as a boxing promoter (if indeed he ever did such work) could not be squared with his having bragged to Martinez that he'd been in business for 26 years without ever having been imprisoned—a comment that a real boxing promoter would not have made.

The defendant also disputes the sufficiency of the evidence supporting his conspiracy conviction. He could not be convicted of conspiring with the government's confidential informant, *United States v. Bey*, 725 F.3d 643, 649 (7th Cir. 2013), and was not; he was convicted of having conspired with two brokers to obtain cocaine from Martinez, who held himself out as a cocaine supplier. The brokers largely dropped out of the picture before the transaction between the defendant and Martinez, but a conspiracy is just an agreement, not the acts that the conspirators agree to commit, and there was an agreement between the defendant and the brokers and it is irrelevant that it wasn't implemented. The brokers had expected that they would be paid for their

part in the deal, even though Jones had not wanted them to be present at the transaction.

The defendant also argues that much of the evidence presented at his trial should have been excluded. He claims that the police did not have probable cause to arrest him and therefore that the evidence seized during the searches of his SUV and then of his property should have been excluded as the fruits of an illegal search. But the agents who arrested him knew he'd been negotiating a sizeable drug deal and had tried to flee when he saw the police at the car wash. They thus had probable cause to suppose that he was committing a drug offense. He claims that the statements by the brokers, because they didn't testify at trial, should have been excluded as hearsay. But the court did not err in concluding on the basis of Martinez's testimony and the content of the brokers' statements that the brokers were Jones's co-conspirators.

He further argues that the recordings from the recording device that Martinez had worn during his conversations with Jones were unreliable because the batteries of the device failed midway through one meeting and because the tapes displayed an incorrect date. But the government had produced a chain of custody for the recordings, and the district judge was entitled to admit the recordings and let the jury decide for itself whether to believe them.

Last, Jones challenges his sentence, arguing that he wasn't responsible for more than 50 kilograms of cocaine. But the district judge had two good reasons to think he was: calculating backward from the money the government seized, and relying on testimony that Jones had purchased 90 kilograms through one of the brokers. The government

had the defendant cold, and the district judge was on solid footing in saying that a sentence above the guideline range would be reasonable given the magnitude of Jones's criminal activity, though ultimately the judge sentenced Jones within the guidelines range.

AFFIRMED