> **NONPRECEDENTIAL DISPOSITION**
> To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted July 5, 2017[*]
Decided July 13, 2017

**Before**

RICHARD A. POSNER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 17-1115

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    *Plaintiff-Appellee*, | Appeal from the United States<br>District Court for the Northern District<br>of Indiana, Hammond Division. |
| *v.* | No. 2:12-cv-154 PRC |
| $353,443 IN U.S. CURRENCY, et al.,<br>    *Defendants*. | Paul R. Cherry,<br>*Magistrate Judge*. |
| Appeal of: | |
| SHAFT J. JONES,<br>    *Claimant*. | |

## O R D E R

Shaft Jones appeals from an order forfeiting cash seized after his arrest for drug trafficking. A magistrate judge, presiding by consent, had granted summary judgment for the government with the explanation that a reasonable factfinder could not conclude

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments. FED. R. APP. P. 34(a)(2)(C).

from the evidence that Jones legitimately acquired the funds. We agree with that assessment and affirm the judgment.

Jones was arrested in 2011 while trying to buy 15 kilograms of cocaine from an informant. He had driven a Cadillac Escalade to the attempted drug transaction, and inside that vehicle authorities found $353,443 in currency. A search warrant later executed at Jones's residence turned up $315,221 inside a parked car, $6,059 hidden in a boot, and many other items used in his drug trade, including guns, ammunition, a ballistic vest, Tasers, digital scales, and a money counter. Authorities also seized $221,546 from four accounts in Jones's name at Wells Fargo Bank. A federal grand jury charged him with conspiring to possess with intent to distribute, and attempting to distribute, cocaine, 21 U.S.C. §§ 846, 841(a)(1), and carrying a firearm during and in relation to a drug-trafficking crime, 18 U.S.C. § 924(c). The indictment also included a forfeiture count covering the currency in the Escalade and other car.

Meanwhile, the Drug Enforcement Administration also sought to forfeit administratively all of the cash and the Escalade. *See* 18 U.S.C. § 983(a); 19 U.S.C. § 1607(a). But on January 23, 2012, Jones submitted a claim to all the property, forcing the United States Attorney's Office to initiate a civil-forfeiture proceeding in the district court. *See* 18 U.S.C. § 983(a)(3); FED. R. CIV. P. SUPP. R. G(2). In its complaint, filed on April 20, the government asserted that the cash was proceeds of drug trafficking or intended for use in buying drugs or facilitating drug trafficking. *See* 21 U.S.C. § 881(a)(6), 18 U.S.C. § 981(a)(1)(A). The government further asserted that the Escalade had been used to facilitate a drug transaction. *See* 21 U.S.C. § 881(a)(4). Jones filed a claim and answer to the complaint and moved to stay the forfeiture case pending disposition of his criminal case. *See* FED. R. CIV. P. SUPP. R. G(5)(a). (Jones's wife also filed a claim, but she does not contest the adverse decision at summary judgment.)

Two years later, in August 2014, a jury found Jones guilty on all charges and also returned a special forfeiture verdict for the currency found in the Escalade and the parked car at his house. *See* 21 U.S.C. § 853. At trial the informant and DEA agents had testified that Jones previously bought 90 kilograms of cocaine and, when he was arrested, was on his way to buy another 15 kilograms at $26,000 per kilogram. Jones had bragged to the informant that he never went to prison despite dealing drugs for 26 years, and he was recorded saying he dealt only with people with at least $100,000. In calculating Jones's guidelines imprisonment range, the district court relied on this evidence to find by a preponderance that Jones had dealt between 50 and 150 kilograms of cocaine and charged his customers $28,000 per kilogram. The court sentenced Jones to

a total of 270 months' imprisonment, and, consistent with the jury's special verdict, ordered forfeiture of the roughly $668,000 from the two vehicles. *United States v. Jones*, 1:11-cr-78 (N.D. Ind. Nov. 9, 2015), *aff'd*, 843 F.3d 321 (7th Cir. 2016).

The forfeiture of the $668,000 in the criminal case removed those funds from contention in the civil-forfeiture action, leaving the $6,059 from the boot, the $221,546 from the Wells Fargo accounts, and the Escalade. After the stay was lifted, Jones moved for summary judgment on the ground that the forfeiture complaint was untimely. He also moved for return of the seized property under Federal Rule of Criminal Procedure 41(g). Jones asserted that the seized funds were "hard-earned legitimate" income from Shaft Entertainment, an entertainment and promotion company he had incorporated in 2010.

The government opposed those motions and, after discovery closed, filed its own motion for summary judgment. The government argued that Jones's convictions and the jury's special forfeiture verdict concerning the $668,000 in currency raised an inference that all of the seized assets were tied to drug trafficking. The government also introduced Jones's income tax returns to establish that, notwithstanding his affidavit swearing he had accumulated the seized currency and bank deposits through Shaft Entertainment, in the previous six years he reported total gross income of $79,591, none of it from the company. And Shaft Entertainment had never filed a federal income tax return. The government pointed further to Jones's boasts to the informant about dealing drugs and to the guns, scales, money counter, and other items found in his house. As for the Escalade, the government argued that Jones had used it to facilitate the attempted purchase of 15 kilograms of cocaine, demonstrating a substantial connection between the car and his drug crimes. *See* 18 U.S.C. § 983(c)(3). Jones responded to the government's motion by attacking the verdict in his criminal case.

The district court denied Jones's motion for return of property, explaining that Federal Rule of Criminal Procedure 41(g) does not apply in a civil-forfeiture proceeding. In a separate order issued the same day, the court denied Jones's motion for summary judgment and granted summary judgment to the government. The court concluded that the civil-forfeiture complaint was timely because the government had filed it on April 20, 2012, within 90 days after Jones asserted a claim in the DEA's administrative action on January 23. *See* 18 U.S.C. § 983(a)(3)(A). The court also ruled that Jones could not collaterally attack his convictions in a forfeiture proceeding.

Concerning the specific property, the district court concluded that the undisputed evidence established that the $6,059 in currency and the funds on deposit at

Wells Fargo are traceable to drug transactions. *See* 21 U.S.C. § 881(a)(6); *United States v. Funds in the Amount of One Hundred Thousand One Hundred & Twenty Dollars ($100,120)*, 730 F.3d 711, 716 n.5 (7th Cir. 2013). Invoking the "sham affidavit" rule, the court concluded that Jones's affidavit asserting that he earned the money legitimately did not create a genuine issue of material fact because he contradicted himself in his tax returns, which were signed under penalty of perjury. *See Cook v. O'Neill*, 803 F.3d 296, 298 (7th Cir. 2015) (explaining that "sham affidavit" generally is not admissible because it contradicts previous testimony); *United States v. Funds in the Amount of Thirty Thousand Six Hundred Seventy Dollars ($30,670)*, 403 F.3d 448, 466 (7th Cir. 2005) (same). Finally, as for the Escalade, the district court reasoned that Jones's use of the vehicle to transport himself and more than $350,000 in currency to buy 15 kilograms of cocaine from the informant makes it forfeitable under 21 U.S.C. § 881(a)(4). *See United States v. One 1984 Cadillac*, 888 F.2d 1133, 1137–38 (6th Cir. 1989). This last conclusion no longer matters, though, because on appeal Jones does not contest the forfeiture of the Escalade.

We first address a procedural hiccup affecting the scope of Jones's appeal. His notice of appeal mentions only the order denying his Rule 41(g) motion, but his submissions to this court show that he intended his appeal to encompass the order granting summary judgment (which the district court entered the same day). The government argues that the notice of appeal, on its face, limits our jurisdiction to the Rule 41(g) decision, since Federal Rule of Appellate Procedure 3(c)(1)(B) requires the appealing party to "designate the judgment, order, or part thereof being appealed." This rule is jurisdictional, *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 315–17 (1988), but we construe its requirements liberally when determining whether a party complied, keeping in mind that the rule's purpose is "to ensure that the filing provides sufficient notice to other parties and the courts." *Smith v. Barry*, 502 U.S. 244, 248 (1992); *see Smith v. Grams*, 565 F.3d 1037, 1043 (7th Cir. 2009) (concluding that appellant's attempt to appeal to Supreme Court did not destroy jurisdiction in court of appeals). Although Jones's notice of appeal specifically identifies only the order denying his Rule 41(g) motion, neither the district court nor the government was confused about his intent. The district court updated its docket to show that Jones had appealed from the separate order denying his motion for summary judgment and granting summary judgment to the government. We have explained that "'inept' attempts to comply with Rule 3(c) are accepted as long as the appellee is not harmed," and here the government concedes that it suffered no prejudice from the faulty notice. *Moran Foods, Inc. v. Mid–Atl. Mkt. Dev. Co.*, 476 F.3d 436, 440 (7th Cir. 2007); *see Harvey v. Town of Merrillville*, 649 F.3d 526, 528–29 (7th Cir. 2011) (concluding that appellate jurisdiction encompassed defendant who was not dismissed from case until after plaintiffs had filed notice of appeal from order

dismissing all other defendants, since final defendant did not assert surprise or prejudice from premature notice of appeal). Jones's filings in this court were sufficient to notify the United States that he appealed from both orders, so we have jurisdiction to review the order denying Jones's motion for summary judgment and granting judgment to the government. *See AlliedSignal, Inc. v. B.F. Goodrich, Co.*, 183 F.3d 568, 571–72 (7th Cir. 1999); *Nichols v. United States*, 75 F.3d 1137, 1140–41 (7th Cir. 1996).

Jones first contends that the district court misapplied the sham-affidavit rule to discount his claim that he legitimately owned the seized funds. Jones says his affidavit provides a plausible explanation for the perceived contradiction between his assertion that he earned his money lawfully through Shaft Entertainment and the evidence that he previously purchased 90 kilograms of cocaine.

But, as the district court reasoned, his affidavit cannot be reconciled with his tax returns. "A 'sham affidavit' is an affidavit that is inadmissible because it contradicts the affiant's previous testimony . . . unless the earlier testimony was ambiguous, confusing, or the result of a memory lapse." *Cook*, 803 F.3d at 298. Here, Jones averred that the seized funds were "related to business activity generated from events." Yet Shaft Entertainment did not file income tax returns, and Jones's individual tax returns, filed under penalty of perjury, report income of less than $15,000 per year. The seized currency and bank deposits exceed his reported income by over $800,000. *See McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 750–51 (7th Cir. 2010) (explaining that sham-affidavit rule applies when change in testimony "is incredible and unexplained"). Jones did not clarify the nature of the business activity, support his conclusory affidavit with business records, or offer an accounting of his or Shaft Entertainment's income. "[E]vidence of legitimate income that is insufficient to explain the large amount of property seized, unrebutted by any evidence pointing to any other source of legitimate income . . . satisfies the burden imposed by the statute." *United States v. $174,206.00 in U.S. Currency*, 320 F.3d 658, 662 (6th Cir. 2003) (applying probable cause standard under previous version of statute); *see also $30,670*, 403 F.3d at 466. The inconsistency between income reported on Jones's individual tax returns and the money seized from his bank accounts supports a reasonable inference "that the affidavit was a sham designed to thwart the purposes of summary judgment." *Castro v. DeVry Univ.*, 786 F.3d 559, 571 (7th Cir. 2015).

Jones next asserts that the government presented "virtually no evidence" that he was involved in drug trafficking and argues that the district court erroneously shifted the burden of proof by requiring him to prove legitimate ownership of the seized funds. His position is frivolous.

It was Jones, not the government, who produced no evidence. The government, as plaintiff in the civil-forfeiture action, met its burden of proving the money's connection to drug trafficking by a preponderance of the evidence. *See* 21 U.S.C. § 881(a)(6); 18 U.S.C. § 983(c)(1); *$30,670*, 403 F.3d at 454. The government introduced uncontradicted evidence of Jones's convictions arising from his attempt to buy 15 kilograms of cocaine at $26,000 per kilogram, his admission to the informant that he had been selling for a long time and previously had purchased and sold 90 kilograms of cocaine, the district court's finding by a preponderance of the evidence at the criminal sentencing phase that he sold the 90 kilograms at $28,000 per kilogram and that all the seized currency was connected to drug trafficking, the jury's special forfeiture verdict, and Jones's tax returns showing negligible lawful income. Jones's reported income could not account for the vast sum of cash, but his prolific drug trade does. *See $30,670*, 403 F.3d at 468 (reasoning that claimant could not support testimony that he lawfully earned seized funds, given that funds exceeded his post-bankruptcy income by $25,000). The district court "properly could draw inferences and grant summary judgment on the basis of the substantial and documented differences between the sources of income properly accounted for in [the claimant's] filings and his claimed sources of income (which he failed to substantiate)." *Id*. at 466.

Once the government met its burden of introducing evidence that the property was subject to forfeiture, the burden shifted to Jones to offer evidence of legitimate ownership. *See United States v. 5 S 351 Tuthill Rd., Naperville, Ill.*, 233 F.3d 1017, 1026 (7th Cir. 2000). Without the affidavit that the district court properly disregarded, Jones offered no evidence from which a finder of fact could infer that he owned the funds legitimately. On appeal he has produced copies of receipts that memorialize deposits into his accounts at Wells Fargo, which he says show income earned legitimately through Shaft Entertainment. But we will not consider evidence introduced only on appeal. *See Packer v. Trs. of Ind. Univ. Sch. of Med.*, 800 F.3d 843, 849 (7th Cir. 2015).

Thus the judgment of the district court is AFFIRMED.