In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-3317

ANTONIO M. JOHNSON,

*Plaintiff-Appellant,*

*v.*

STEVEN SCOTT,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Indiana, Fort Wayne Division.
No. 1:07-cv-155-RBC—**Roger B. Cosbey**, *Magistrate Judge.*

ARGUED APRIL 7, 2009—DECIDED AUGUST 7, 2009

Before POSNER, RIPPLE, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* When a suspect waves the white flag of surrender, the use of force in connection with an arrest may, as an objective matter, become unnecessary and inappropriate. Not all surrenders, however, are genuine, and the police are entitled to err on the side of caution when faced with an uncertain or threatening situation. This case involves Antonio M. Johnson, a suspect in a shooting who fled police first by car and then

on foot. He made a last-second surrender when Sergeant Steven Scott and Archer, Scott's German Shepherd police dog, were closing in on him. Archer bit Johnson's left arm, and Scott struck Johnson in the process of handcuffing him.

Johnson filed suit under 42 U.S.C. § 1983 alleging that Scott used excessive force in violation of the Fourth Amendment during the course of the arrest. Scott filed a motion for summary judgment, which the district court granted. Johnson now appeals that decision to this court, and we affirm.

## I

At 1:30 a.m. on January 19, 2006, Johnson arrived at the Paradise Lounge in Marion, Indiana. He smoked some marijuana there and then went on to the dance floor. His entertainment was soon interrupted by John "Toady" Drake, the owner of the Lounge and Johnson's uncle; Drake called Johnson over and informed him that there was a person at the Lounge who intended to shoot him. Drake apparently knew that there was an active warrant out for Johnson's arrest, and so he wanted to warn Johnson that he was calling the police. Although Johnson had no valid driver's license, he drove off in his friend's white Chevrolet Caprice.

At about the same time, Sergeant Scott responded to a dispatch concerning a suspected shooting at the Paradise Lounge. Scott then heard a further transmission that a white Chevrolet Caprice had just left the Lounge's parking

lot. Scott soon encountered the Caprice and turned on his emergency lights. Johnson's deposition testimony says all that one needs to know about his response to Scott:

Q: Okay. When the . . . police car, that was operated by Captain [*sic*] Scott, turned on the . . . emergency lights, did you know that . . . those lights were intended for you?

A: Yes sir.

Q: Okay. So, when you turned and . . . went the other way, you knew that you were evading the police trying to stop you?

A: Yes sir.

During his flight, Johnson ignored a stop sign and exceeded the speed limit, despite icy conditions on the roads. When he encountered a police roadblock, he stopped his car and fled on foot.

Scott jumped out of his squad car to pursue Johnson and released Archer to do the same. Johnson darted into a residential yard and hurtled over a waist-high chain link fence, but then he encountered a five-foot-tall wooden fence that blocked his progress. It was at this point that he turned around, put his arms in the air, and said "I give up."

Scott and Archer were only six to eight feet behind Johnson when he uttered those words. Archer grabbed Johnson's left arm, and Scott knocked Johnson to the ground with his forearm. Johnson was struggling to get away from Archer's biting, but Scott interpreted this

as resistance, and so he struck Johnson several times to subdue him. When Archer moved to bite Johnson's upper left leg, Scott was able to get a grip on Johnson's left arm and successfully handcuff him. No more than five or ten seconds later, Scott ordered Archer off Johnson, and the dog complied. There is no evidence that Scott used any further force after that point. (Earlier, Johnson had alleged in an affidavit that Archer began biting his left arm again after he was handcuffed, but the district court granted a motion to strike this portion of the affidavit as inconsistent with Johnson's prior deposition testimony. Johnson has not complained about that ruling on appeal.) Johnson was charged with various crimes and pleaded guilty to two Class D felonies: possession of under three grams of cocaine and resisting law enforcement with a vehicle.

Johnson filed suit against Scott under 42 U.S.C. § 1983, alleging excessive force during the arrest in violation of the Fourth Amendment. The district court granted summary judgment to Scott, finding that the force Scott used was objectively reasonable as a matter of law. Johnson now appeals that decision to this court.

## II

This court reviews a district court's grant of summary judgment *de novo*. *Sound of Music Co. v. 3M*, 477 F.3d 910, 914 (7th Cir. 2007). The question whether the use of force during an arrest is proper under the Fourth Amendment depends on the objective reasonableness of the officer's actions, judged on the basis of the conditions the officer

faced. *Graham v. Connor*, 490 U.S. 386, 396 (1989). In order to assess objective reasonableness, the court must consider all the circumstances, including notably "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*

The *Graham* factors weigh heavily in favor of Scott. First, there were two serious crimes at issue: a shooting and reckless flight from the police in a vehicle. Second, given the nature of the first of these crimes, Scott reasonably believed that Johnson might be armed. Finally, it is clear from Johnson's actions and deposition testimony that he was attempting to evade arrest.

Johnson insists on appeal that it was unreasonable for Scott to use Archer or strike Johnson after he had put his hands in the air and said "I give up." It is well established that a police officer may not continue to use force against a suspect who is subdued and complying with the officer's orders. See, *e.g., Dye v. Wargo*, 253 F.3d 296, 298 (7th Cir. 2001); *Priester v. Riviera Beach,* 208 F.3d 919, 927 (11th Cir. 2000). But that principle depends critically on the fact that the suspect is indeed subdued. Here, Scott had no idea how Johnson was going to behave once he was cornered. No law that we know of required Scott to take Johnson's apparent surrender at face value, a split second after Johnson stopped running. Until he encountered a fence that was too high for him to jump over, Johnson had used every method at his disposal to flee from the police. The surrender also did not establish that

Johnson was unarmed. A reasonable officer could think that the use of the dog was necessary to help control Johnson; otherwise, Johnson might have had the time he needed to retrieve and use a weapon. Finally, it is worth noting that it could not have been more than one second between Johnson's surrender and the use of force by Scott, given the distance between Archer and Johnson at the time of surrender. In short, Scott's use of force—in the form of Archer—to subdue Johnson was objectively reasonable, given the uncertainties in the situation that faced him.

In so holding, we do not mean to minimize the unpleasantness of having a German Shepherd clamp onto one's arm or leg. This does not mean, however, that the practice of deploying trained dogs to bite and hold suspects is unconstitutional *per se;* the situation might warrant the use of a dog that has been trained and that is under the control of the officer, as Archer was. See, *e.g., id.* at 960-61 (suspect fled into "dense, dark, wooded terrain" and was warned to surrender or the police dog would be sent to search for him). Nor are we saying that any use of a biting dog is automatically reasonable. See, *e.g., Vathekan v. Prince George's County*, 154 F.3d 173, 176 (4th Cir. 1998) (police failed to give a warning before releasing a police dog into an occupied room with instructions to bite anyone it came across). We acknowledge that there was no verbal warning in this case. Johnson did not argue, however, that such a warning would have made a difference, and on these facts, it is easy to imagine why. As the district court pointed out, "Scott had no real opportunity to [warn] given Johnson's head-

long flight and surprising, last-second surrender." *Johnson v. Scott*, 2008 U.S. Dist. LEXIS 62235, at *20 (N.D. Ind. Aug. 14, 2008).

### III

In addition to arguing that he should be granted summary judgment because his conduct was reasonable, Scott also asserts that he is entitled to qualified immunity. We need not reach that issue, as we conclude that the district court was correct in its assessment of Scott's use of force. Given the nature of the crimes at issue, Johnson's reckless and determined flight, and the last-second nature of his surrender, we conclude that Scott acted reasonably in his use of Archer to detain Johnson while Scott completed the arrest.

We AFFIRM the judgment of the district court.