NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted July 28, 2010[*]
Decided July 28, 2010

**Before**

WILLIAM J. BAUER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

No. 09-1130

| | |
|---|---|
| LOUIS R. HARRIS, JR., | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Southern District of Indiana, |
| | Indianapolis Division. |
| *v.* | |
| | No. 1:05-cv-889-WTL-JMS |
| KEVIN SMITH, et al., | |
| *Defendants-Appellees.* | William T. Lawrence, |
| | *Judge.* |

**O R D E R**

Louis Harris, Jr., was wanted on outstanding warrants and for questioning in a child-molestation investigation, and, after a lengthy chase culminating in an attack by a police dog, he finally surrendered. In this lawsuit under 42 U.S.C. § 1983, Harris alleges that various officers from the Anderson and Elwood, Indiana, Police Departments violated his rights under the Fourth Amendment by illegally entering his home and then using excessive force to arrest him. The district court granted summary judgment for all but one defendant, and a jury found in favor of the final officer. On appeal Harris challenges the

---

[*]After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

grant of summary judgment as well as the district court's denial of his motion in limine to exclude from trial evidence regarding the child-molestation investigation. We affirm the district court's judgment in all respects.

Harris was suspected in Missouri of molesting his girlfriend's daughter, but the investigation was suspended when Harris, his girlfriend, and her daughter abruptly left town to avoid the authorities. After Harris's girlfriend, Sheila Garrett, used food stamps in Anderson, Indiana, the state's Division of Family and Children learned of their whereabouts. The agency told detective Kevin Smith of the Anderson Police Department about the suspected child abuse, gave him the address where it believed the family was staying, and requested that he investigate. Smith spoke with a detective from Missouri who told him that the local prosecutor expected a warrant to soon issue, but upon discovering that Harris had outstanding warrants in Indiana for contempt of court and failure to appear, Smith decided it would be prudent to arrest Harris immediately.

Smith drove to the address that the Division of Family and Children had provided and saw a van registered to Garrett. When he returned later, he saw a woman matching Garrett's description leave the van and enter the home, so he approached the door, accompanied by a few other officers and a police dog. Garrett answered, along with two other women residing there. Garrett denied that Harris was inside but, according to the defendants, one of the three women consented to a search of the house. At that point, two officers went inside, along with a restrained police dog, providing a canine warning before entering. Harris emerged from the bathroom, identified himself, and began to drop to his knees as directed when the officers told him he was being placed under arrest for the outstanding warrants. But after briefly feigning surrender, Harris abruptly ran out the back door. The officers released the police dog to pursue him, but he managed to escape and also evaded an additional officer who later pursued him by car. He was not apprehended until later that evening when Officer Lenny Popp of the Elwood, Indiana, Police Department—who was monitoring the chase on his police scanner and knew that Harris was suspected of child molestation and wanted on outstanding warrants—caught him in the woods with the help of another police dog.

Harris filed suit under § 1983 against Detective Smith and the other Anderson police officers at the scene of the attempted arrest at his residence, alleging that they illegally entered the home and used excessive force once inside. He also sued Officer Popp, alleging that Popp permitted the police dog to attack him even after he had submitted to arrest, resulting in serious injuries to his arm. The district court granted summary judgment for each of the Anderson police officers but permitted Harris to go to trial on his claim against Popp, with the assistance of counsel recruited by the court to represent him. Harris filed a motion in limine to exclude from trial any evidence regarding the child-molestation

investigation and subsequent conviction. The district court excluded evidence of the conviction but permitted Popp to introduce evidence of the investigation. The jury found in Popp's favor, and this pro se appeal followed.

We begin with Harris's claims against the Anderson police officers, reviewing de novo the district court's grant of summary judgment in their favor. *See Johnson v. Scott*, 576 F.3d 658, 660 (7th Cir. 2009). Harris first renews his argument that it was illegal for the defendants to enter the house to arrest him. An officer may enter a residence to execute a valid arrest warrant if the suspect lives there and the officer has "reason to believe" he is at home. *Payton v. New York*, 445 U.S. 573, 603 (1980); *United States v. Jackson*, 576 F.3d 465, 467-68 (7th Cir. 2009). Harris concedes that the outstanding warrants were valid, but he asserts that the officers had no reason to believe that he was inside the home because Garrett denied that he was there and they had no information otherwise. The officers had reason to believe that Harris was *living* at the residence: The Indiana Division of Family and Children told Officer Smith that Harris, Garrett, and her daughter were staying together at the Anderson address, and Smith surveilled the house earlier in the day and saw Garrett drive up in her van and go inside. Whether this information also supplied reason to believe that Harris himself was present, despite Garrett's insistence otherwise, is a separate question, *see, e.g., El Bey v. Roop*, 530 F.3d 407, 416-19 (6th Cir. 2008); *United States v. Bervaldi*, 226 F.3d 1256, 1263-67 (11th Cir. 2000), but one we need not answer. The defendants provided evidence at summary judgment that one of the female residents present that day consented to their entry, and Harris did not offer any contrary evidence to raise a genuine factual dispute on the issue. When police receive consent to enter a home to make an arrest, their entry is reasonable and does not violate the Fourth Amendment. *United States v. Walls*, 225 F.3d 858, 862 (7th Cir. 2000).

Harris also renews his argument that the Anderson police officers used excessive force in attempting to arrest him. He asserts that, when he first emerged from the bathroom, one officer pointed a shotgun at him with "extreme aggression," while the police dog, though restrained, "lunged" toward him. In assessing whether the use of force during an arrest was proper, we ask whether the officer's actions were objectively reasonable in light of the conditions he faced. *Graham v. Connor*, 490 U.S. 386, 397 (1989); *Johnson*, 576 F.3d at 660. But before determining whether an officer used excessive force, we must first be satisfied that a seizure took place, meaning that the party challenging the use of force actually yielded to the officer's authority. *California v. Hodari D.*, 499 U.S. 621, 626 (1991); *McCoy v. Harrison*, 341 F.3d 600, 605 (7th Cir. 2003). "[A] fleeing suspect—even one who is confronted with an obvious show of authority—is not seized until his freedom of movement has been terminated by an intentional application of physical force or by the suspect's submission to the asserted authority." *Kernats v. O'Sullivan*, 35 F.3d 1171, 1178 n.4 (7th Cir. 1994); *see Steen v. Myers*, 486 F.3d 1017, 1021 (7th Cir. 2007); *Reeves v. Churchich*, 484 F.3d

1244, 1252-53 (10th Cir. 2007). Here, Harris was confronted with a display of authority and momentarily feigned surrender by beginning to drop to his knees, but he quickly bolted for the door and managed to evade police until Officer Popp caught him later in the woods. A defendant who fakes compliance with an officer's orders and then flees the scene has not been seized, let alone unreasonably so, for purposes of the Fourth Amendment. *See United States v. Baldwin*, 496 F.3d 215, 218-19 (2d Cir. 2007); *United States v. Valentine*, 232 F.3d 350, 359 (3d Cir. 2000); *United States v. Washington*, 12 F.3d 1128, 1132 (D.C. Cir. 1994).

Moreover, the right to make an arrest "necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it," *Graham*, 490 U.S. at 396, and the defendants' decision to enter Harris's home with a restrained police dog after warning that they were doing so and to briefly display a weapon as Harris emerged suddenly from the bathroom was not excessive. Any threat of violence from the shotgun or the dog, which was restrained until Harris fled, lasted but a few moments and was reasonable given Harris's previous flight from law enforcement and his possible involvement in a crime of aggression.

We turn, then, to Harris's argument regarding Officer Popp. Harris does not renew any evidentiary objections he may have made at trial or challenge the jury's verdict in favor of Popp; he argues only that the district court erred in denying his pretrial motion to exclude evidence of the child-molestation investigation against him. Because "decisions regarding the admission and exclusion of evidence are peculiarly within the competence of the district court," we review such decisions only for abuse of discretion. *Adams v. City of Chicago*, 469 F.3d 609, 612 (7th Cir. 2006) (internal citation omitted). On review, the relevant inquiry is not how we would have decided the evidentiary issue in the first instance but, rather, whether any reasonable person could agree with the district court's ruling. *Griffin v. Foley*, 542 F.3d 209, 217-18 (7th Cir. 2008).

Federal Rule of Evidence 403 permits the exclusion of evidence if its probative value is substantially outweighed by, among other things, the danger of unfair prejudice. Evidence of child molestation can pose a significant risk of prejudice, *see, e.g., United States v. Ham*, 998 F.2d 1247, 1252 (4th Cir. 1993) ("[N]o evidence could be more inflammatory or more prejudicial than allegations of child molestation."), and in some cases the relevance of such evidence will be so minimal that its prejudicial effect is not justified, *see id.* at 1253 (excluding evidence of child molestation and other inflammatory allegations where it was relevant only as indirect proof of motive for murder and would have made the motive only "slightly more likely"). But the relevant inquiry under Rule 403 is whether the danger of prejudice *substantially outweighs* the probative value of the evidence, and, in light of the deferential nature of our review, the district court's decision to admit the evidence here was not an abuse of discretion. The reasonableness of an officer's use of force depends on the

totality of circumstances confronting him, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer[] or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396; *see Abdullahi v. City of Madison*, 423 F.3d 763, 768 (7th Cir. 2005). Here, Officer Popp had learned that Harris was a suspected child molester on the lam who was wanted on other outstanding arrests and had successfully evaded police by both car and foot. Each of these details was probative of the totality of circumstances confronting Popp when he entered the woods in pursuit of Harris and thus the reasonableness of his use of a police dog. We therefore conclude that the district court was within its discretion to permit the jury to hear evidence of the suspected crime that Officer Popp himself could take account of during the arrest.

We have considered Harris's remaining arguments, but they lack merit and do not warrant further discussion. The judgment of the district court is AFFIRMED.