In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 23-1321

CHARLES BRUMITT,

*Plaintiff-Appellee,*

*v.*

SAM SMITH,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court for the
Southern District of Indiana, Evansville Division.
No. 3:20-cv-00260 — **Tanya Walton Pratt**, *Chief Judge.*

———————————

ARGUED JANUARY 30, 2024 — DECIDED MAY 20, 2024

———————————

Before SYKES, *Chief Judge*, and KIRSCH and PRYOR, *Circuit Judges*.

KIRSCH, *Circuit Judge*. After Charles Brumitt struck Evansville Police Department Sergeant Sam Smith, Smith defended himself by punching Brumitt four times in the face, knocking him unconscious. Brumitt sued Smith under 42 U.S.C. § 1983, asserting that Smith used excessive force in violation of his Fourth Amendment rights. Smith moved for summary judgment. He argued that the force he used was objectively

reasonable and that, because no clearly established law held otherwise, he was entitled to qualified immunity. The district court denied Smith's motion, concluding that factual disputes prevented it from determining whether the force was reasonable and whether Smith was entitled to qualified immunity. Smith filed this interlocutory appeal from the denial of qualified immunity. Because we conclude that the law does not clearly establish that Smith used unlawful force, we reverse the district court's decision and remand to enter judgment for Smith.

I

"We recount the facts in the light most favorable to [Brumitt]," *McGee v. Parsano*, 55 F.4th 563, 566 (7th Cir. 2022), although many of the facts are undisputed because much of the incident was captured by Smith's body-worn camera.

Sam Smith, a sergeant with the Evansville Police Department, encountered Charles Brumitt around 3 am while patrolling in his police car. Smith entered the parking lot of a bar and spotted Brumitt lying down on a utility box. He left his car to check on Brumitt's wellbeing and to see if there were any warrants for Brumitt's arrest. Assuming that Brumitt (who was lying on his side) was drunk, Smith asked if he was okay. Brumitt mumbled, "No," and stopped talking. Smith told Brumitt to talk to him, that he was a police officer, and that he wanted to make sure Brumitt was okay. Still in a muffled voice, Brumitt said he could be "passed out wherever [he] want[s]." Smith disagreed, saying he could "take [him] to jail." Brumitt challenged Smith, "Take me, motherfucker. Take me." Smith responded, "Take you to jail?"

Because of the angling of the parties' bodies in front of the camera, the recording did not fully capture what happened next. Smith testified that, because he thought he saw a debit card sticking out of Brumitt's pocket (which might have had information needed to check for warrants), he said, "Let's see your ID," and reached for the card. Brumitt began to rise and snarled, "Don't you reach in my butt, damn it. God damn it, don't reach in my butt." Smith responded, "I'll tell you what," and Brumitt insisted, "Damn it, don't do this shit."

The clash turned physical. While seated, Brumitt swung his arm at Smith, and his open hand hit Smith's face in a roundhouse swing. Brumitt then slurred, "Get the fuck off me, motherfucker." Having never been hit while on duty, the attack startled but did not injure Smith. Smith grabbed Brumitt's shirt and punched Brumitt's face four times over (at most) four seconds, later saying, "You don't hit me." He described his response as "purely instinctual" and likely based on his training as a competitive fighter. (Smith holds several black belts.)

Sometime during the four seconds, Brumitt lost consciousness. Smith did not realize or process that Brumitt was unconscious until after the fourth punch. Brumitt lay still for several minutes while Smith called an ambulance and handcuffed Brumitt, who suffered an acute fracture of his eye socket, a broken nose, and lacerations that required surgery. Brumitt later pleaded guilty to misdemeanor battery and public intoxication.

Brumitt sued Smith and the City of Evansville, alleging, along with state-law claims, that Smith violated his Fourth Amendment rights. Relevant here, Smith moved for summary judgment, arguing that his force was reasonable, and he

was entitled to qualified immunity because precedent did not put him on clear notice that his actions were unconstitutional. Brumitt replied that Smith's force, enhanced by his martial-arts training, was grossly disproportionate to the threat that Brumitt posed while drunk, and it needlessly continued after Brumitt was unconscious and subdued. The law, Brumitt added, clearly established that an officer may not continue to use force against a person who is subdued; therefore, qualified immunity was inappropriate.

The district court denied the motion for summary judgment. It accepted that Brumitt threatened Smith. But, it continued, a reasonable jury could decide (as the court itself did) that Smith's use of force was undue because he had no reason to believe that Brumitt was armed, and his threat was "mitigated by [his] apparent intoxication, drowsiness, and lack of coordination." A jury could also find, the court added, that Smith continued to use force on Brumitt after he was unconscious and that, between punches, a reasonable officer would have "see[n] Brumitt with his arms at his sides and his head tilted to the side" and stopped punching. Regarding qualified immunity, the court stated that the right Brumitt asserted—"to be free from force once subdued"—was clearly established. Moreover, it added, the parties genuinely disputed whether "Brumitt was unconscious, and thus subdued, after Sergeant Smith's second or third strike" and whether a "reasonable officer would have perceived him as unconscious and had time to recalibrate his use of force." Therefore, the court concluded, it could not determine whether Smith was entitled to immunity.

## II

Brumitt's excessive-force claim under the Fourth Amendment is governed by the objective reasonableness standard. *Plumhoff v. Rickard*, 572 U.S. 765, 774 (2014). This standard requires assessing the totality of the circumstances facing Smith and balancing "the nature and quality of the intrusion on [Brumitt's] Fourth Amendment interests against the countervailing governmental interests at stake." *Strand v. Minchuk*, 910 F.3d 909, 914 (7th Cir. 2018) (quoting *Plumhoff*, 572 U.S. at 774). Relevant factors include whether Brumitt posed a threat to Smith, resisted arrest, or tried to flee, as well as the severity of the crime of which he was suspected. *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)). But even if under this standard Smith used objectively unreasonable force, he is entitled to qualified immunity if Brumitt cannot "demonstrate that the right to be free from the particular use of force under the relevant circumstances was 'clearly established.'" *Abbott v. Sangamon County*, 705 F.3d 706, 725 (7th Cir. 2013).

## A

Before turning to the qualified-immunity analysis, we first consider jurisdiction. We generally lack jurisdiction to review a denial of summary judgment, but the collateral-order doctrine permits immediate review of the denial of qualified immunity. *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). We may review pure questions of law, *McGee*, 55 F.4th at 571, but we cannot review a district court's order denying qualified immunity "insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial," *Johnson v. Jones*, 515 U.S. 304, 319–20 (1995). We must determine whether the denial "centers on pure questions of historical fact," such as "who did what, when or where, how or

why," or if the denial relies on undisputed facts. *McGee*, 55 F.4th at 571 (cleaned up).

The parties debate whether factual disputes defeat appellate jurisdiction. Brumitt argues that factual disputes identified by the district court—such as whether Smith used proportionate force and whether a reasonable officer would know that Brumitt was unconscious—prevent us from determining whether Smith is entitled to qualified immunity. Smith counters that no factual disputes prevent appellate jurisdiction and that the district court erred in stating that the ultimate question of whether the force was reasonable was one for the jury.

Appellate jurisdiction is secure. It is true that Smith's arguments at times fail to take factual inferences in Brumitt's favor. But any reliance on disputed facts is not fatal to appellate jurisdiction because we can separate the legal and factual arguments. See *Smith v. Finkley*, 10 F.4th 725, 735 (7th Cir. 2021). By construing all the facts in Brumitt's favor, we can decide whether it is clearly established under the Fourth Amendment that Brumitt had a right to be free from Smith's use of force under the circumstances —a pure question of law. See *McGee*, 55 F.4th at 571; see also *Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513, 520 (7th Cir. 2012) ("Objective reasonableness of force is a legal determination rather than a pure question of fact for the jury to decide.").

B

With jurisdiction secure, we turn to the question of whether Smith is entitled to qualified immunity. Smith argues that the district court erred in framing the right, which it said was clearly established, as the right to be free from force once

subdued. Framing the right this way, he says, impermissibly views the incident with 20/20 hindsight. It also, Smith suggests, wrongly assumes that precedent clearly requires reasonable police officers to repeatedly reconsider the use of force throughout an encounter lasting only a few seconds to guarantee that officers know and react to the precise moment that a suspect becomes unconscious.

We agree with Smith that Brumitt has not met his burden of showing that Smith violated a clearly established right. When reviewing force for reasonableness, we assess the "facts and circumstances that confronted the officer," without "20/20 hindsight." *Abbott*, 705 F.3d at 724 (cleaned up). Those facts are (1) when Brumitt appeared intoxicated, Smith asked if he was okay and sought his identification; (2) Brumitt dared Smith to take him to jail, cursed at him, and although he was drowsy and uncoordinated, hit Smith in the face with his hand; and (3) Smith responded to that surprise attack with substantial force—four quick punches in four seconds. We will assume that Smith could have interrupted his delivery of force to see Brumitt appear limp. But to conclude that Smith clearly violated Brumitt's right to be free from excessive force, we must assume that a reasonable officer in Smith's position would know instantaneously that Brumitt was unconscious and react accordingly within less than four seconds. Brumitt has not, however, identified a case establishing that an officer must do so and must cease force at the precise second a suspect acquiesces. To the contrary, we "give considerable leeway to law enforcement officers' assessments about the appropriate use of force in dangerous situations." *Id.* at 724–25 (quotation omitted).

Smith also correctly argues that framing the right as the right to be free from force once subdued is impermissibly broad. The Supreme Court and this court have reiterated that a right is clearly established only if it is clear that "the officer's conduct in the particular circumstances before him" is prohibited. *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018); see *Thompson v. Cope*, 900 F.3d 414, 421–22 (7th Cir. 2018). This applies to excessive-force cases. See *Strand*, 910 F.3d at 915. Although Brumitt need not point to an identical case, see *Thompson*, 900 F.3d at 422, "every reasonable officer must have understood that" Smith's conduct was unlawful, *McGee*, 55 F.4th at 572. But the principle that officers may not use force on a subdued suspect does not clearly establish that officers must repeatedly reevaluate their use of force throughout an encounter lasting a few seconds to avoid applying extra units of force immediately after a suspect submits. Likewise, the other broad principle that Brumitt invokes—force must be proportionate to a threat—did not put Smith on notice that four fast punches in response to a suspect's unprovoked blow to an officer's face is disproportionate to that blow.

The cases that Brumitt cites, including *Strand v. Minchuk*, 910 F.3d 909 (7th Cir. 2018), and *Becker v. Elfreich*, 821 F.3d 920 (7th Cir. 2016), do not show that Smith violated clearly established law. In both *Strand* and *Becker*, we observed the general principle that an officer should not continue using force after a suspect is subdued. But *Strand* involved an officer who shot a suspect after the suspect (who had punched the officer) had already voiced his surrender and stood with his hands in the air for up to 15 seconds. See *Strand*, 910 F.3d at 912, 917. By contrast, Smith did not shoot Brumitt, and Brumitt had not voiced his surrender, nor had he made any prolonged gesture

indicating his surrender. And in *Becker*, an officer allowed his trained attack dog to bite a suspect for "up to three minutes" after the suspect, who never struck the officer, had surrendered with his hands above his head. 821 F.3d at 927, 929 n.2. We explicitly noted that—in finding qualified immunity was improper—the case did "not involve a split-second delay" but rather a significant amount of time. *Id.* at 929 n.2. Again, Brumitt struck Smith, and Brumitt did not make any gesture indicating his surrender. And Smith's use of force did not occur over a significant amount of time. There were fewer than four seconds between the moment Brumitt went limp and the moment Smith stopped using force. No case clearly establishes that a reasonable officer must reassess his force that quickly. Smith is therefore entitled to qualified immunity.

Brumitt offers several replies, but they do not persuade us. First, he argues that whether Smith had the chance, during his four-second use of barehanded force, to recalibrate it after Brumitt lost consciousness is a factual question. See *Strand*, 910 F.3d at 916; see also *Tolliver v. City of Chicago*, 820 F.3d 237, 246 (7th Cir. 2016) (describing whether there was a "natural breaking point" between the first and later uses of force as "a factual matter"). But, as we have discussed, even if a jury resolved this question in Brumitt's favor, the problem remains that no clearly established law *required* Smith to recalibrate the force throughout a quick, four-second response to a suspect's surprise attack to his face.

Second, Brumitt contends that were we to conclude that Smith is entitled to qualified immunity, it would establish "a bright-line rule that any assault that takes place within a short period of time be treated as a single use of force." We disagree. Officers must cease their use of force once a suspect is

"known to be subdued." *Miller v. Gonzalez*, 761 F.3d 822, 829–30 (7th Cir. 2014). Yet they are entitled to reasonable leeway to permit them time to perceive that the threat level has diminished. See *Alicea v. Thomas*, 815 F.3d 283, 288 (7th Cir. 2016) ("If an officer's threat perception changes, so too should her force calculus.").

Next, Brumitt argues that "facts … could support the conclusion that the blows Smith delivered were on-the-spot punishment, not reasonably adapted to obtain or keep control" and thus violated clearly established law. See *Johnson v. Rogers*, 944 F.3d 966, 970 (7th Cir. 2019). But Brumitt does not explain what those facts are. It is possible that he believes that a reasonable jury might discredit Smith's testimony that he perceived Brumitt to be a threat after Brumitt hit him, implying that any force was excessive. But the district court concluded that Brumitt unquestionably posed a threat to Smith by swinging at him, and Brumitt does not challenge the validity of that conclusion.

Finally, for the first time on appeal, Brumitt cites recent criticism of the qualified-immunity doctrine and argues that we should do away with it altogether. But even if this argument had been properly preserved for appellate review, we cannot ignore settled Supreme Court precedent on the doctrine.

Because we conclude that Smith is entitled to qualified immunity, we need not address whether he used objectively reasonable force. The district court had to answer that broader question because Smith moved for summary judgment on the merits as well as on qualified-immunity grounds. But for our part, we do not decide the validity of Smith's conduct under the Fourth Amendment. We conclude only that, because

Smith's conduct did not violate Brumitt's clearly established Fourth Amendment rights, we must reverse the district court's decision denying qualified immunity. We therefore remand with instructions to enter judgment in Smith's favor on the Fourth Amendment claim.

REVERSED AND REMANDED

Pryor, *Circuit Judge*, concurring. I join the opinion of the court. I am compelled to write separately, however, to emphasize why I understand today's holding to be a narrow one.

Sergeant Sam Smith knocked Charles Brumitt unconscious. Sergeant Smith then struck Brumitt in the face several more times. It is blackletter law that "police officers cannot continue to use force once a suspect is subdued." *E.g.*, *Abbott v. Sangamon County*, 705 F.3d 706, 732 (7th Cir. 2013). That law is "well-established in this circuit." *Id.* (collecting cases dating back to 1995).

Our cases also recognize that officers need a reasonable amount of time to *realize* that a suspect has been subdued before any additional force violates the constitution. *Johnson v. Scott* is instructive on this issue. 576 F.3d 658 (7th Cir. 2009). There, a suspect was fleeing police on foot and was cornered after a fence blocked his route. *Id.* at 659. At that point, he put his hands up and made a "surprising, last-second surrender," just as the officer—in a split-second reaction—deployed his police dog on the suspect. *Id.* at 659–61. We found that the officer did not act unreasonably, even though "[i]t is well established that a police officer may not continue to use force against a suspect who is subdued." *Id.* at 660. That's because "that principle depends critically on the fact that the suspect is indeed subdued," something that the officer could not have known within only a second or so. *Id.* Implicit in *Johnson* is the point that a reasonable officer must have sufficient time to comprehend that the suspect has been subdued. *See id.*

This concept is also present in *Strand v. Minchuk*, 910 F.3d 909 (7th Cir. 2018) and *Becker v. Elfreich*, 821 F.3d 920 (7th Cir. 2016). In both cases, we found officers did not deserve

qualified immunity because, at least in part, they had suffi-
cient time to comprehend that a suspect was subdued. In
*Strand*, we noted that the officer had anywhere from seven to
fifteen seconds to react to a suspect's surrender. 910 F.3d at
917. Because of this, enough time had elapsed to make it "ob-
jectively unreasonable" for the officer "to believe that he was
in imminent danger." *Id.* Similarly, in *Becker*, an officer saw a
suspect surrendering and allowed his police dog to bite the
suspect for "up to three minutes." 821 F.3d at 929 n.2. We ex-
plicitly noted that the case did "not involve a split-second de-
lay" but instead featured a significant amount of time in
which the officer knew the suspect was subdued, making it
clearly established that force was unreasonable. *Id.* at 929 &
n.2.

In the context of this case, the gap of time between Brumitt
going limp and Sergeant Smith's final strike was insufficient
to have put Sergeant Smith on notice that his additional force
was unreasonable. For this reason, Sergeant Smith is entitled
to qualified immunity. I caution that this case should not be
overread, lest we create a safe haven for the use of force.